**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

JENNIFER GLASS                              :
293 Maple Ridge Drive                       :
Canonsburg, PA 15317,                       :     **CASE NO. 5:19-CV-01331**
                                            :
and                                         :     **JUDGE PAMELA A. BARKER**
                                            :
                                            :     **Magistrate Judge George J. Limbert**
KRISTIE MASIELLA                            :
4751 Bluestern Lane                         :
Stow, OH 44224,                             :
                                            :
and                                         :
                                            :
TRACY REESE                                 :     **PLAINTIFFS' AMENDED CLASS**
225 N Harmony Street                        :     **ACTION COMPLAINT**
Medina, OH 44256,                           :     **(Jury Demand Endorsed Herein)**
                                            :
        Plaintiffs,                         :
                                            :
v.                                          :
                                            :
TRADESMEN INTERNATIONAL, LLC                :
9760 Shepard Road                           :
Macedonia, OH 44056,                        :
                                            :
and                                         :
                                            :
TRADESMEN INTERNATIONAL, LLC                :
c/o Statutory Agent                         :
Corporation Service Company                 :
50 West Broad Street, Suite 1330            :
Columbus, OH 43215,                         :
                                            :
and                                         :
                                            :
MATTHEW MCCLONE                             :
c/o Tradesmen International, LLC            :
9760 Shepard Road                           :
Macedonia, OH 44056,

        Defendants.

NOW COME Plaintiffs, Jennifer Glass ("Glass"), Kristie Masiella ("Masiella"), and Tracy Reese ("Reese") (collectively, "Plaintiffs"), by and through their undersigned counsel, and state and allege as follows:

## PARTIES

1.      Tradesmen International, LLC ("Tradesmen") is a limited liability company incorporated in Delaware with its corporate offices located at 9760 Shepard Road, Macedonia, Ohio, Summit County.

2.      Defendant Matthew McClone ("McClone") is the current Vice President of Workforce Development & Safety at Tradesmen in Summit County and he resides in the State of Ohio.

3.      At all times relevant herein, Plaintiffs Glass, Masiella and Reese were employed by Tradesmen in various capacities.

4.      At all times relevant herein, Tradesman was the employer of Plaintiffs for purposes of R.C. §4112.

5.      At all times relevant herein, McClone was the direct supervisor and, therefore, the employer of Plaintiffs Masiella and Reese for purposes of R.C. §4112.

## VENUE

6.      Venue properly lies in this Court, as Defendants' principal place of business is in Summit County, Defendants conducted business activity in Summit County, Plaintiffs Masiella and Reese were last employed by Defendants in Summit County, and all events referred to in this Complaint occurred in Summit County.

7.     This action is brought pursuant to the provisions of the Ohio Civil Rights Act and, to wit, R.C. §4112.02 and §4112.99.  The allegations and claims in this action are intended to assert rights and causes of action only under and pursuant to the laws of the State of Ohio.

## FACTUAL ALLEGATIONS PERTAINING TO ALL NAMED PLAINTIFFS AND THE CLASS

8.     Tradesmen is a male-dominated company that seems to take great pride in its rich history of misogyny.

9.     All but one member of the current Executive Management Team is male. This male domination in the upper ranks of management is not out of the ordinary for Tradesmen.  Indeed, no woman has ever held an operations executive leadership position at the company.  Women mostly have been relegated to support positions in the organization such as Human Resources, clerks and administrative staff.  Indeed, other than Human Resources, there never has been a female Officer or Vice President at Tradesmen.

**10.**     Tradesmen is run as a "good ole boys" club.  For years, Tradesmen developed, fostered, and encouraged a culture and working environment that objectifies women and relegates them to the "service" of their male co-workers, supervisors and executive leadership.

11.     Male employees – including managers and senior executives – would comment crudely on the physical appearance of their female subordinates.  This behavior started at the very top of Tradesmen.  The founder and Chairman of Tradesmen, Joseph

Wesley, would provide obscene commentary about women employees.  Wesley once told Reese in front of other managers and other executives at Tradesmen that she had a "very nice set of tits."

12.     This type of behavior gave a strong signal to other men in at Tradesmen that it was acceptable to objectify women.  Glass was told by other managers that "her tits looked great" and that "her ass looked perfect."

13.     As an accepted part of Tradesmen's culture, male members of the Executive Management Team, intermediate managers and other male employees would routinely proposition females to engage in sexual acts with them.  When these women would refuse the advances of their superiors and co-workers, they would often be subjected to brutal retaliation.

14.     Nothing was ever done to the men that would act this way.  Indeed, the only action Tradesmen ever took was to send a memo to the support staff at the company chastising them for accepting invitations by these managers to go out for drinks after work.

15.     With the approval and participation of management, Tradesmen engaged in conduct that had a materially adverse effect on the terms and conditions of employment for its female employees.

16.     In all operation based (as compared to support) departments at Tradesmen, except for Human Resources, there was a well-established glass ceiling.  Women were categorically denied advancement beyond a certain level at Tradesmen.

17.     Female participation in Executive Management was limited exclusively to Human Resources.  Even in that department, only a single female employee at a time was ever raised to the executive level.

18.     The system of advancement perpetuated at Tradesmen ensured that women were paid less than their male counterparts.

A.     **Rule 23 Class Definition**

19.     The Proposed Rule 23 Class consists of all females who are, have been, or will be employed by Tradesmen and who worked out of Tradesmen's corporate headquarters in Macedonia, Ohio, during the applicable liability period until the date of judgment.

20.     Plaintiffs Masiella and Reese are both members of the R.C. §4112.99 Class. The systemic discrimination and harassment described in this Complaint has been and is continuing in nature.

21.     Plaintiffs reserve the right to amend the class definitions based on discovery or legal developments.

B.     **Efficiency of Class Prosecution and Class Claims**

22.     Certification of the proposed Class is the most efficient and economical means of resolving the questions of law and fact that are common to the claims of the Plaintiffs and the Class.

23.     The individual claims of Plaintiffs, as Class Representatives, require resolution of the common questions concerning whether Tradesmen has engaged in a pattern and/or practice of sexual harassment, gender discrimination and retaliation

against its female employees. Class Representatives seek remedies to eliminate the adverse effects of such discrimination in their own lives, careers, and working conditions and in the lives, careers and working conditions of the Class members and to prevent Tradesmen's continued sexual harassment, gender discrimination and retaliation.

24.     The Class Representatives have standing to seek such relief because of the adverse effect that such harassment and discrimination had on them individually and on female employees generally. Tradesmen caused Plaintiffs' injuries through its harassing and discriminatory practices, policies and procedures and through the disparate impact its policies, practices and procedures have on female workers.

25.     These injuries are redressable through systemic relief, such as equitable and injunctive relief and other remedies sought in this action.

26.     Plaintiffs have a personal interest in the policies, practices and procedures implemented at Tradesmen.

27.     To obtain relief for themselves and the Class members, the Class Representatives will first establish the existence of systemic sexual harassment and gender discrimination as the premise for the relief they seek. Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

28.     Certification of the proposed Class is the most reasonable and efficient means of presenting the evidence and arguments necessary to resolve such questions for the Class Representatives, the Class members and Tradesmen.

**C.     Numerosity and Impracticality of Joinder**

29.     The Class that the Class Representatives seek to represent is so numerous that joinder of all members is impracticable. In addition, joinder is impractical as the Plaintiffs are physically based in different locations throughout the State of Ohio.  Fear of retaliation on the part of Tradesmen's female employees is also likely to undermine the possibility of joinder.

**D.     Common Questions of Law and Fact**

30.     The prosecution of the claims of the Class Representatives will require the adjudication of numerous questions of law and fact common to their individual claims and those of the Class they seek to represent.

31.     The common issues of law include, inter alia: (a) whether Defendants have engaged in unlawful, systemic sexual harassment (b) whether Defendants have engaged in unlawful gender discrimination in its promotion and compensation policies, practices, and procedures; (c) a determination of the proper standard for proving whether Tradesmen's employment policies had a disparate impact on the Class; (d) a determination of the proper standards for proving a pattern or practice of discrimination by Tradesmen against its female employees, and under the disparate treatment theory of liability for employees; and (e) whether Tradesmen is liable for continuing systemic violations of R.C. §4112 and other statutes.

32.     The common questions of fact include, inter alia, whether Tradesmen has: (a) developed, fostered and encouraged a culture and working environment that

objectifies women; (b) tolerated, participated and/or approved of objectifying women in the workplace (c) used a compensation system that lacks appropriate standards, implementation metrics, quality controls, transparency, and opportunities for redress; (d) relied on compensation criteria that perpetuate discrimination, such as highly subject evaluations, basing salaries on prior salaries or on whether that person was a woman (e) compensated female employees less than similarly situated male employees in base salary, bonuses, and/or promotions; (f) minimized, ignored, or covered up evidence of sexual harassment and gender discrimination in the workplace and/or otherwise mishandled the investigation of and response to complaints of discrimination; (g) tolerated, participated and/or approved of retaliation against women when they engaged in protected activities, and; (h) otherwise discriminated against female employees in the terms and conditions of employment.

33.     Upon information and belief, Tradesmen's employment policies, practices, and procedures are not unique or limited to any office; rather, they apply uniformly and systematically to employees throughout the company, occurring as a pattern and practice throughout all office locations.  They thus affect the Class Representatives and Class members in the same ways regardless of the office location in which they work.

### E.     Typicality of Claims and Relief Sought

34.     The Class Representatives' claims are typical of the claims of the proposed Class. The Class Representatives possess and assert each of the claims they assert on behalf of the proposed Class. They pursue the same factual and legal theories and seek similar relief.

35.     Like members of the proposed Class, the Class Representatives are females who were employees of Tradesmen during the liability period.

36.     Differential treatment between male and female employees occurs as a pattern and practice throughout all of Tradesmen's offices.  Tradesmen, acting through its male employees, sexually harasses female employees in such a severe and pervasive manner that it significantly affected the terms, conditions and privileges of Plaintiffs' employment. In addition, Tradesmen engages in a pattern of behavior that discriminates against female employees in compensation and promotion and subjects them to a misogynistic work culture dominated by men. This differential treatment has affected the Class Representatives and the Class members in the same or similar ways.

37.     Tradesmen has failed to respond adequately or appropriately to evidence and complaints of sexual harassment, retaliation and/or discrimination. The Class Representatives and Class members have been affected in the same or similar ways by Tradesmen's failure to implement adequate procedures to detect, monitor, and correct these unlawful patterns and practices.

38.     Tradesmen has failed to create adequate procedures to ensure its executive leadership complies with equal employment opportunity laws regarding each of the policies, practices, and procedures referenced in this Complaint, and Tradesmen has failed to discipline adequately others in the company's leadership when they violate anti-harassment and anti-discrimination laws. These failures have affected the Class Representatives and the Class members in the same or similar ways. The relief necessary

to remedy the claims of the Class Representatives is the same as that necessary to remedy the claims of the proposed Class members.

39.    The Class Representatives seek the following relief for their individual claims and for the claims of the members of the proposed Classes: (a) the issuance of a permanent injunction requiring Defendants to abolish discrimination, harassment and retaliation; (b) the issuance of a permanent injunction requiring allocation of significant funding and trained staff to implement all changes within two years; (c) the issuance of a permanent injunction requiring removal or demotion of all supervisors who have engaged in discrimination, harassment or retaliation, and failed to meet their legal responsibility to promptly investigate  complaints and/or take effective action to stop and deter prohibited personnel practices against employees; (d) the issuance of a permanent injunction creating a process for the prompt investigation of discrimination, harassment and/or retaliation complaints; (e) the issuance of a permanent injunction requiring mandatory and effective training for all employees and supervisors on discrimination, harassment and relation issues, investigations and appropriate corrective actions; (f) the issuance of an order requiring Defendants to expunge Plaintiffs' personnel files of all negative documentation; (g) an award of compensatory and monetary damages to compensate Plaintiffs in an amount in excess of $25,000 per claim per Plaintiff; (h) for an award of punitive damages against Defendants in an amount in excess of $25,000 per Plaintiff; (i) for an award of reasonable attorney's fees and non-taxable costs for Plaintiffs' claims as allowable under law; (j) for an award requiring Defendants to cease and desist from any employment practice which discriminates or harasses against Plaintiffs or

others on the basis of race, color, national origin, religion, sex, military status, disability, age, ancestry or in retaliation against the person because he or she complained about such discrimination; (k) for an award of taxable costs of this action, and; (l) for an award of such other relief as this Court may deem necessary and proper.

**F.      Adequacy of Representation**

40.      The Class Representatives' interests are coextensive with those of the members of the proposed Class. The Class Representatives seek to remedy Tradesmen's harassing and discriminatory policies, practices, and procedures so female employees will not receive disparate pay and differential treatment.

41.      The Class Representatives are willing and able to represent the proposed Class fairly and vigorously as they pursue their similar individual claims in this action.

42.      The Class Representatives have retained counsel sufficiently qualified, experienced, and able to conduct this litigation and to meet the time and fiscal demands required to litigate an employment discrimination class action of this size and complexity. The combined interests, experience, and resources of the Class Representatives and their counsel to litigate competently the class claims at issue in this case clearly satisfy the adequacy of representation requirement of Ohio Rule of Civil Procedure 23(a)(4).

**G.      Requirements of Rule 23(B)(2)**

43.      Tradesmen has acted on grounds generally applicable to the Class Representatives and the proposed Class by adopting and following systemic policies, practices, and procedures that harass and discriminate on the basis of gender.  Sexual

harassment and gender discrimination are Tradesmen's standard operating procedure rather than a sporadic occurrence.

44.     Tradesmen has also acted or refused to act on grounds generally applicable to the Class Representatives and the proposed Class by, inter alia: (a) using a promotion system that systematically, intentionally, or knowingly disadvantages women; (b) systematically, intentionally, or knowingly denying promotions for women in favor of similarly situated males; (c) using a compensation system and promotion system that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency, and opportunities for redress; (d) compensating women less than similarly situated males in salary and/or bonuses; (e) systematically,  intentionally, or knowingly compensating women less than similarly situated male employees; (f) cultivating an indifference to evidence of harassment and discrimination in the workplace or otherwise minimizing, ignoring, mishandling, or covering up evidence of or complaints of sexual harassment and gender discrimination; and (g) otherwise harassing or discriminating against women in the terms and conditions of employment.

45.     Tradesmen's policies, practices, and procedures with respect to harassment and compensation have led to gender discrimination and stratification. The systemic means of accomplishing such gender-based stratification include, but are not limited to, Tradesmen's policies, practices, and procedures for awarding base compensation, bonus pay, and promotions to female employees.  These practices and procedures all suffer from a lack of transparency; adequate quality standards and controls; sufficient implementation metrics; and opportunities for redress or challenge.  As a result, female

employees are compensated within a system that is insufficiently designed, articulated, explained, or implemented to consistently, reliably or fairly manage or reward them.

46.     Tradesmen's systemic discrimination and refusals to act on nondiscriminatory grounds justify the requested injunctive and declaratory relief with respect to the Class as a whole.

47.     Injunctive, declaratory, and affirmative relief are a predominant form of relief sought in this case. Entitlement to declaratory, injunctive, and affirmative relief flows directly and automatically from proof of Tradesmen's systemic sexual harassment and gender discrimination. In turn, entitlement to declaratory, injunctive, and affirmative relief forms the factual and legal predicate for recovery by the Class Representatives and Class members of monetary and non-monetary remedies for individual losses caused by the systemic discrimination, as well as their recovery of compensatory and punitive damages.

**H.     Requirements of Rule 23(B)(3)**

48.     The common issues of fact and law affecting the claims of the Class Representatives and proposed Class members—including, but not limited to, the common issues identified above—predominate over any issues affecting only individual claims. The common issues include whether Tradesmen has engaged in gender discrimination against female employees by paying and promoting female employees, less than their male counterparts.

49.     A class action is superior to other available means for fairly and efficiently adjudicating the claims of the Class Representatives and members of the proposed Class.

50.     By virtue of the pattern and practice of discrimination at Tradesmen, the Class Representatives and Class members are eligible for monetary remedies for losses caused by the systemic harassment and discrimination, including back pay, front pay, compensatory damages, and other relief.

51.     Additionally, or in the alternative, the Court may grant "partial" or "issue" certification under Rule 23(c)(4). Resolution of common questions of fact and law would materially advance the litigation for all Class members.

## FACTUAL ALLEGATIONS PERTAINING TO MASIELLA

52.     From approximately 2004 to 2017, Masiella, a female, worked at Tradesmen in a variety of capacities including administrative assistant, project coordinator and injury coordinator.

53.     On April 2010, Masiella was sexually assaulted by Defendant McClone. Specifically, Defendant McClone lured Masiella to his hotel room under false pretenses.

54.     Once in his room, Defendant McClone grabbed Masiella roughly, threw her on the bed in the room and held her firmly while groping and trying to kiss her.

55.     Masiella was able to fight off Defendant McClone's advances and flee the room from the encounter.  Masiella was particularly hurt because, at the time, she saw McClone as a trusted friend within the Company.

56.     A few days later, Defendant McClone contacted Masiella, apologized, explained he did not know what had gotten into him that night and begged her not to tell anyone what he had done.

14

57.     At the time, while devastated by what Defendant McClone had done, Masiella accepted his apology and promised to keep what happened to herself because she knew that McClone was engaged to be married and did not want to ruin that relationship.

58.     However, Defendant McClone never forgot how Masiella had rebuffed his sexual advances.

59.     In 2013-14, Defendant McClone became the executive in charge of the Project Support Group, the department in which Masiella worked.

60.     Masiella was subjected to severe and pervasive workplace sexual harassment by Defendant McClone during the time he was her manager at Tradesmen.

61.     In that role, Defendant McClone began to materially and adversely affect the terms and conditions of Masiella's employment.  Defendant McClone marginalized Masiella's role in the department by changing and diminishing her job responsibilities. Defendant McClone refused to pay Masiella for the extra hours she was working. Defendant McClone took away Masiella's office and placed her in a cubical.  Defendant McClone began to micromanage Masiella's duties and activities.

62.     Defendant McClone held Masiella to a different, higher standard than her co-workers.   Defendant McClone unfairly disciplined Masiella – often yelling and berating her in front of her co-workers.

63.     When Masiella would complain about her treatment, McClone would tell her "you had your chance to fuck me."

64.     In fear that Defendant McClone was going to fabricate a reason to fire her, Masiella went to Human Resources. No action was taken against McClone.

65.     Masiella also told another Vice President with Tradesmen, what had happened.  The executive gave Masiella a job in his department away from McClone.  The executive also told Masiella that he let the Company's lawyer know about what she had told him.  Again, no action was taken against McClone.

66.     Masiella took another position in the Company for less pay in order to get away from McClone.  However, the new position was not sustainable and Masiella left Tradesmen.

## FACTUAL ALLEGATIONS PERTAINING TO REESE

67.     Reese, a female, worked at Tradesmen from approximately 2005 until 2014.

68.     Reese held several positions at Tradesmen including administrative assistant, credit analyst, credit processor and payroll processor.

69.     In 2011, Reese was transferred into the Project Support Group (PSG).

70.     In 2013, Defendant McClone was promoted to head of PSG.  Prior to this role, McClone had been the Manager of Tradesmen's Madison, Wisconsin office. Reese knew McClone because she had done payroll processing work for the Wisconsin office and had met him when he traveled to Northeast Ohio for sales meetings.

71.     During these trips, McClone was flirtatious with Reese.

72.     When McClone was promoted and moved to Northeast Ohio, his advances intensified.  McClone propositioned Reese to come back to his house and "get drunk and

dirty." She declined. In fact, McClone propositioned Reese on several occasions and she always rebuffed his advances.

73.     Reese was a single mother with three children. She needed her job and did not want to engage in anything that could jeopardize her work. Moreover, Reese was aware of McClone's reputation for attempting to have sex with female employees at Tradesmen and she wanted no part of it.

74.     Again, Defendant McClone did not handle rejection well. In retaliation, McClone began to materially and adversely affect the terms and conditions of Reese's employment. McClone began to dramatically increase Reese's work load. She was forced to work harder and longer than her co-workers.

75.     Defendant McClone also reduced Reese's pay by removing a bonus opportunity she had been entitled to previously.

76.     Defendant McClone held Reese to a different, higher standard than her co-workers. While other employees were permitted to go to lunch with their co-workers. Reese was not. Indeed, group lunches were common at Tradesman. In nine years with the Company, Reese had never received any discipline (verbal or written). However, McClone disciplined Reese for going out to lunch with Masiella.

77.     In fear for her job, Reese complained to Human Recourses about the way she was being treated by McClone. Nothing was done.

78.     Reese went so far as asking her former manager if she could transfer into that department to get away from McClone. Her former manager needed help, wanted

Reese back in the department and Reese would have been qualified for that position. However, when McClone heard about the transfer request he quickly put a stop to it.

79.     McClone's harassing behavior intensified.  Reese went back to Human Resources and asked Jeannie Woodall to intervene or permit Reese to transfer back to the Payroll Department.   Again, nothing was done and McClone stopped the transfer request.

80.     Within a week of her second complaint, Defendant McClone unjustly fired Reese as retaliation for not having sex with him and for complaining to Human Resources about his harassing behavior claiming McClone had a personality conflict with Reese.

## FACTUAL ALLEGATIONS PERTAINING TO GLASS

81.     From approximately 2007 to 2017, Glass, a female, worked at Tradesmen. She worked as an Industrial Sales Representative for the Pittsburgh Sales Office until approximately 2012 and as the General Manager of the Pittsburgh Office from 2012 until 2017.

82.     Glass was subjected to severe and pervasive workplace sexual harassment by senior executives, managers and co-workers.

83.     While employed by Tradesmen, Glass was one of a few female salespersons in the entire company.  When she was promoted to General Manager, she was the only female General Manager at the Company.

84.     Glass repeatedly was subjected to crude and offensive behavior by her male counterparts and managers.  These individuals would frequently remark on how she would dress, her breasts and other parts of her body.  They would tell obscene and

sexually-charged jokes and engaged in sexual innuendo which had the effect of objectifying women.  Glass would ask these men to stop their lewd behavior, but the men never listened.

85.     These instances occurred in front of other managers and senior executives – even in front of members of the Human Resources department.  Sometimes it was the senior executives themselves that would engage in this severe and pervasive conduct.  No one at Tradesmen ever took appropriate remedial action to address this behavior.

86.     This behavior regularly occurred when Glass came for company-wide sales meetings held in Ohio. Glass was required to attend these meetings in connection with her job duties, and she was traumatized by them. These meetings were consistently capped off by company-sponsored happy hours with open bars, where the booze flowed freely, the men drank to excess, and their sexual harassment of Glass intensified beyond what she experienced every day she worked for Tradesmen.

87.     Glass was groped, fondled and grabbed by her superiors in front of other managers at Tradesmen.  Again, nothing was ever done.

88.     Glass was subjected to different terms and conditions of employment because she was a woman.

89.     Glass was denied promotions because she was a woman even though she had better qualifications than the men that received those promotions.

90.     In 2017, Glass learned that Tradesmen had begun to advertise for someone to replace her position.  When Glass approached her Area Manager, Shaun Heckman,

about the job posting, she was told she better start looking for another position at another company because she was going to lose her job.

91.     As a result of what Heckman told her and the harassing and disparate treatment she received while working at Tradesmen, Glass followed her Manager's instructions and left the Company.

## COUNT I: SEXUAL HARASSMENT/HOSTILE ENVIRONMENT

92.     Plaintiffs incorporate by reference all the allegations contained in the preceding paragraphs of the Complaint.

93.     Defendant Tradesmen, acting through Defendant McClone and other male employees and managers, sexually harassed Plaintiffs by subjecting them to unwelcome and harassing conduct on the basis of their gender.  Defendants have engaged in an intentional, company-wide pattern and/or practice of discrimination against Plaintiffs.

94.     The harassing conduct was sufficiently severe and pervasive to affect the terms, conditions, and privileges of Plaintiffs' employment.

95.     The harassing conduct unreasonably interfered with Plaintiffs' work performance and created an intimidating, offensive, and hostile work environment.

96.     The harassing conduct was committed by Plaintiffs' co-workers, managers and supervisors and was engaged in recklessly, maliciously, and intentionally in callous disregard of the rights of Plaintiffs.

97.     Upon information and belief, Defendants have been accused of harassment by at least one other female at Tradesmen prior to his harassment of Plaintiffs, and Tradesmen was aware of this prior incident or incidents.

98.     Defendants failed to prevent, respond to, investigate and/or appropriately resolve this sexual harassment.

99.     Defendants failed to provide Plaintiffs with a work environment free of sexual harassment.

100.    The actions and inactions of Defendants are in violation of the rights guaranteed under Ohio Revised Code §4112.02. Plaintiffs have a remedy under Ohio Revised Code §4112.99.

101.    Defendants' actions and inactions complained of above were so egregious, reckless, willful, and deliberate that Plaintiffs are entitled to an award of compensatory and punitive damages under the provisions of Ohio's Civil Rights Act.

102.    As a result of the foregoing actions and inactions of Defendants, Plaintiffs have suffered and continue to suffer harm, including, but not limited to, mental anguish, humiliation, embarrassment, and emotional and physical distress.

103.    Plaintiffs' harm entitles them to damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) per Plaintiff.

## COUNT II: RETALIATION

104.    Plaintiffs incorporate by reference all the allegations contained in the preceding paragraphs of the Complaint.

105.    Plaintiffs engaged in protected activity when they submitted complaints for sexual harassment to Tradesmen.

106.    Plaintiffs acted in good faith and provided Tradesmen with information to investigate their sexual harassment claims.

107.    Tradesmen thereafter unlawfully retaliated against Plaintiffs based upon their submission of sexual harassment complaints, by subjecting them to adverse employment actions, including, but not limited to, employee discharge, unfair discipline and failing to promote them.

108.    Defendants' retaliatory acts against Plaintiffs were a direct and proximate result of their protected activities.

109.    A reasonable person would find Defendants' retaliatory acts materially adverse and such acts would dissuade a reasonable person from complaining or opposing discrimination.

110.    Defendants' actions and inactions complained of above were so egregious, reckless, willful and deliberate that Plaintiffs are entitled to an award of compensatory and punitive damages under the provisions of Ohio's Civil Rights Act.

111.    As a result of the foregoing actions and inactions of Defendants, Plaintiffs have suffered and continue to suffer harm, including, but not limited to, mental anguish, humiliation, embarrassment, and emotional and physical distress.

112.    As a direct and proximate case of Defendants' wrongful conduct, Plaintiffs have suffered and will continue to suffer economic and non-economic damages, all or a portion of which are likely to continue indefinitely into the future.

## COUNT III: GENDER DISCRIMINATION

113.    Plaintiffs incorporate by reference all the allegations contained in the preceding paragraphs of the Complaint.

114.    At all times material herein, Plaintiffs qualified as "employees" of Defendants under R.C. §4112.02(A).

115.    At all times relevant herein, Defendants, including the individual defendant, qualified as "employers" under R.C. §4112.02(A).

116.    Plaintiffs are female employees and, under R.C. §4112.02(A), members of a statutorily protected class.

117.    Glass was qualified for her job positions and, throughout her employment, fully competent to perform her essential job duties.

118.    Masiella was qualified for her job positions and, throughout her employment, fully competent to perform her essential job duties.

119.    Reese was qualified for her job positions and, throughout her employment, fully competent to perform her essential job duties.

120.    Defendant Tradesmen, acting through Defendant McClone and other male employees and managers, discriminated against Plaintiffs by subjecting them to different terms and conditions of employment on the basis of their gender, including by engaging in intentional disparate treatment including the denial of promotions, unequal pay and even employment termination.

121.    Defendants have engaged in an intentional, company-wide pattern and/or practice of discrimination against Plaintiffs.

122.    The foregoing practices established and/or ratified by Defendants have produced an unjustified disparate impact on Defendants with respect to the terms and conditions of their employment.

123.    As a result of this disparate treatment and disparate impact discrimination, Defendants have treated Plaintiffs differently from and less preferentially than similarly situated male employees with respect to, among other things, pay and promotions.

124.    Defendants have failed to prevent, respond to, investigate and/or appropriately resolve this gender discrimination.

125.    Defendants' proffered reasons for these adverse employment actions are a mere pretext for gender discrimination.

126.    As a direct and proximate cause of Defendants' wrongful conduct, Plaintiffs have suffered and will continue to suffer severe economic and non-economic damages, all or a portion of which are likely to continue indefinitely into the future.

### COUNT IV: AIDING AND ABETTING DISCRIMINATION

127.    Plaintiffs incorporate by reference all the allegations contained in the preceding paragraphs of the Complaint.

128.    At all times material herein, Plaintiffs qualified as "employees" of Defendants under §4112.02(A).

129.    At all times relevant herein, Defendants, including the individual defendants, qualified as "employers" under O.R.C. §4112.02(A).

130.    Plaintiffs are female employees and, under R.C. §4112.02(A), members of a statutorily protected class.

131.    Glass was qualified for her job positions and, throughout her employment, fully competent to perform her essential job duties.

132.    Masiella was qualified for her job positions and, throughout her employment, fully competent to perform her essential job duties.

133.    Reese was qualified for her job positions and, throughout her employment, fully competent to perform her essential job duties.

134.    Defendants subjected Plaintiffs to different terms and conditions of employment and suffered adverse employment actions such as denial of promotions, unequal pay and even employment termination because of their gender.

135.    Defendants' proffered reasons for these adverse employment actions are a mere pretext for gender discrimination.

136.    Defendants aided and abetted discriminatory conduct by obstructing and refusing to comply with Ohio's anti-discrimination laws.

137.    Defendants violated Ohio Revised Code §4112.02(J) by aiding and abetting discrimination of Plaintiffs because of their gender.

138.    As a direct and proximate cause of Defendants' wrongful conduct, Plaintiffs have suffered and will continue to suffer severe economic and non-economic damages, all or a portion of which are likely to continue indefinitely into the future.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Honorable Court grant the following relief:

(a)    Acceptance of jurisdiction in this case;

(b)    Certification of this case as a class action under Ohio Rule of Civil Procedure 23, on behalf of the proposed Plaintiff Class, designation of the proposed

Class Representatives as representatives of this Class, and designation of Plaintiffs' counsel of record as Class Counsel;

(c)     A declaratory judgment that the practices complained of therein are unlawful and violate, among other laws, Chapter 4112 of the Ohio Revised Code and applicable local laws;

(d)     A permanent injunction against Tradesmen, its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with it from engaging in any further unlawful practices, policies, customs, and usages set forth therein;

(e)     An Order requiring the Company to initiate and implement programs that (i) remedy the hostile work environment at Tradesmen; (ii) ensure prompt, remedial action regarding all claims of gender discrimination; and (iii) eliminate the continuing effects of the discrimination and retaliatory practices described therein;

(f)     An Order requiring Tradesmen to initiate and implement systems for hiring, promoting, and compensating female employees in a non-discriminatory manner;

(g)     An award of back pay, front pay, lost benefits, preferential rights to jobs, recovery of penalties, and other damages for lost compensation and job benefits suffered by the Plaintiffs and Members of the Class in an amount not less than $5,000,000.00.

(h)     An award of nominal, liquidated, and compensatory damages to Plaintiffs and Members of the Class in an amount not less than $5,000,000.00;

(i)     Award punitive damages to Plaintiffs and Members of the Class in an amount not less than $10,000,000.00;

(j)     An award of litigation costs and expenses, including reasonable attorneys' fees, to Plaintiffs;

(k)     An award of pre-judgment and post-judgment interest; and

(l)     For an award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Bradley A. Sherman*
Bradley A. Sherman (0063906)
F. Allen Boseman, Jr. (0084103)
Ashley M. Fuchs (0097943)
SHERMAN BOSEMAN LEGAL GROUP, LLC
800 West St. Clair Avenue, 4th Floor)
Cleveland, OH  44113
Telephone:  216.239.1414
Facsimile:   216.239.1316
Email:  bradley@shermanboseman.com
        allen@shermanboseman.com
        ashley@shermanboseman.com

Attorneys for Plaintiffs
JENNIFER GLASS, KRISTIE MASIELLA and
TRACY REESE, on behalf of themselves and
Members of the Class.

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury by the maximum number of jurors permitted.

*/s/ Bradley A. Sherman*
Bradley A. Sherman

One of the Attorneys for Plaintiffs
JENNIFER GLASS, KRISTIE MASIELLA and
TRACY REESE on behalf of themselves and
Members of the Class

## CERTIFICATE OF SERVICE

I hereby certify that, on March 20, 2020, a copy of the foregoing *Plaintiffs' Amended Class Action Complaint* was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Bradley A. Sherman*
Bradley A. Sherman

One of the Attorneys for Plaintiffs
JENNIFER GLASS, KRISTIE MASIELLA and
TRACY REESE on behalf of themselves and
Members of the Class