IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JENNIFER GLASS, et al.,                              CASE NO. 5:19-CV-01331

                              **Plaintiffs,**

      -vs-                                        JUDGE PAMELA A. BARKER

TRADESMEN INTERNATIONAL, LLC,
et al.,                                             MEMORANDUM OF OPINION AND
                                 ORDER
                    **Defendants.**

      This matter comes before the Court upon the Motion to Dismiss Plaintiffs' Second Amended Complaint in Part and to Strike, filed by Defendant Tradesmen International, LLC ("Tradesmen") on April 30, 2020.  (Doc. No. 31.)  Plaintiff Tracy Reese ("Reese") filed a Brief in Opposition to Defendant Tradesmen's Motion on June 1, 2020.  (Doc. No. 34.)  Defendant Tradesmen filed a Reply in Support of its Motion on June 15, 2020.  (Doc. No. 35.)

      On April 30, 2020, Defendant Matthew McClone ("McClone") filed a Motion to Join Tradesmen's pending Motion to Dismiss in Part and Strike.  (Doc. No. 32.)  Plaintiff did not oppose McClone's request.

      For the following reasons, McClone's Motion to Join (Doc. No. 32) is GRANTED and Tradesmen's Motion to Dismiss in Part and to Strike (Doc. No. 31) is GRANTED IN PART and DENIED IN PART.

I.    **Background**

A.    **Factual Background**

Plaintiff Tracy Reese worked at Tradesmen from 2005 until 2014.[1]  (Doc. No. 29, ¶ 67.)  Tradesmen describes itself as a "staffing company that specializes in providing skilled and experienced craft professionals to employers throughout the United States and Canada."  (Doc. No. 31, PageID# 633.)  During her tenure at Tradesmen, Reese held several positions, including "administrative assistant, credit analyst, credit processor and payroll processor."  (Doc. No. 29, ¶ 68.)  Reese alleges that she was subjected to severe sexual harassment and gender discrimination during her employment at Tradesmen.  (*Id.* at ¶¶ 11, 67-80.)

Reese alleges that her supervisor, McClone, harassed and unfairly targeted her for negative treatment after she rebuffed his multiple sexual advances.  (*Id.* at ¶ 72.)  Prior to 2013, Reese handled some payroll processing for McClone when he worked in Tradesmen's Madison, Wisconsin office.  (*Id.* at ¶ 70.)  Reese alleges that McClone was "flirtatious" with her when he traveled to Tradesmen's Northeast Ohio headquarters.  (*Id.* at ¶ 70-71.)

Reese alleges that McClone's behavior intensified in 2013, when he was promoted and transferred to Northeast Ohio.  (*Id.*)  Reese alleges that McClone propositioned Reese "on several occasions" and, at one point, asked her to "come back to his house and 'get drunk and dirty.'"  (*Id.* at ¶ 72.)  Reese alleges that she "always rebuffed his advances."  (*Id.*)

Reese alleges that McClone did not handle rejection well and that he began to retaliate against her for refusing his propositions.  (*Id.* at ¶ 74.)  Reese alleges that McClone began to "dramatically

---

[1] As discussed *infra*, two former plaintiffs, Jennifer Glass ("Glass") and Kristie Masiella ("Masiella") also brought claims in this matter.  Both Glass's claims and Masiella's claims have been dismissed from this case.  (*See* Docs. No. 25, 43.)  Tracy Reese is the sole named plaintiff in this matter.

2

increase" her workload, forcing her to work longer and harder than her coworkers. (*Id.*)  At the same time, McClone reduced Reese's pay by removing a bonus opportunity for which she was previously eligible. (*Id.* at ¶ 75.)  McClone also held Reese to a separate, higher standard than other employees and disciplined Reese for going out to lunch with Masiella. (*Id.* at ¶ 76.)

Reese alleges that, in fear for her job, she approached Tradesmen's Human Resources department about McClone's behavior, but that nothing was done. (*Id.* at ¶ 78.)  After Reese went to Human Resources, McClone intensified his harassment of Reese. (*Id.* at ¶ 79.)  Reese again sought help from Human Resources and asked Jeannie Woodall to intervene or else permit Reese to transfer back to her prior position in the Payroll Department. (*Id.* at ¶ 79.)  Again, Human Resources failed to stop McClone's alleged harassment. (*Id.*)  Reese alleges that McClone stopped Reese's transfer request. (*Id.*)  Within a week of Reese's second complaint to Human Resources, McClone fired Reese in "retaliation for not having sex with him and for complaining to Human Resources about his harassing behavior . . . ." (*Id.* at ¶ 80.)

More generally, Reese asserts that similar unlawful conduct and differential treatment between male and female employees occurs throughout Tradesmen's offices, regardless of the office location. (*See* ¶¶ 31-33.)  Reese alleges that sexual propositions and crude comments to female employees were an accepted part of Tradesmen's culture. (*Id.* at ¶ 13.)  For example, Reese alleges that Joseph Wesley, Tradesmen's founder and chairman, once told Reese in front of other Tradesmen managers and executives that Reese had "a very nice set of tits." (*Id.* at ¶ 11.)  Reese alleges that when female employees refused the sexual advances of their superiors and coworkers, the women were often "subjected to brutal retaliation." (*Id.* at ¶ 13.)  Further, according to Reese, there was a "well-established glass ceiling" at Tradesmen, meaning that women were categorically denied

3

advancement beyond a certain level at Tradesmen.  (*Id.* at ¶ 16.)  At the Executive Management level, female participation was limited exclusively to Human Resources and Reese alleges that only one female employee at a time was ever elevated to the executive level.  (*Id.* at ¶ 17.)  Reese claims that this limited system of advancement ensured that women were paid less than their male counterparts. (*Id.* at ¶ 18.)

### B.  Procedural History

On May 10, 2019, Reese, along with former plaintiffs Masiella and Glass, filed a Class Action Complaint ("Initial Complaint") against Tradesmen and McClone (collectively, "Defendants") in the Court of Common Pleas of Summit County, Ohio.  (Doc. No. 1-2.)  In the Initial Complaint, Reese, Masiella, and Glass asserted claims on behalf of themselves and a putative class of female employees against Defendants for gender discrimination, sexual harassment/hostile work environment, retaliation, and aiding and abetting discrimination in violation of the Ohio Civil Rights Act, Ohio Rev. Code § 4112.  (*Id.*)

On June 10, 2019, Tradesmen removed the suit to this Court.  (Doc. No. 1.)[2]  Shortly thereafter, on June 17, 2019, Tradesmen filed a Motion to Strike Class Claims, as well as a Motion to Compel Individual Arbitration and to Dismiss the Claims of Plaintiffs Masiella and Glass.  (Docs. No. 8, 9.)  On February 19, 2020, the Court granted Tradesmen's Motion to Strike Class Claims and ordered Plaintiffs to amend the Initial Complaint within thirty days.  (Doc. No. 25.)  Also on February 19, 2020, the Court dismissed Glass's claims and ordered Glass and Defendants to arbitration pursuant to the terms of Glass's Arbitration Agreement.  (*Id.*)  The Court deferred ruling on

---

[2] The Court denied Plaintiffs' Motion to Remand on February 19, 2020.  (Doc. No. 25.)

4

Defendants' Motion to Compel Arbitration with respect to Masiella until the Court could complete an evidentiary hearing to determine whether an enforceable arbitration agreement existed between Masiella and Defendants.  (*Id.*)

On April 14, 2020, Reese and former plaintiff Masiella filed a Second Amended Complaint ("Complaint").  In this Complaint, Reese and Masiella asserted claims on behalf of themselves and a putative class of all female employees "who are, have been, or will be employed by Tradesmen and who worked out of Tradesmen's corporate headquarters in Macedonia, Ohio, during the applicable liability period until the date of judgment" against Defendants.  (Doc. No. 29, ¶ 19.)  They asserted claims for sexual harassment/hostile work environment, retaliation, gender discrimination, and aiding and abetting discrimination in violation of the Ohio Civil Rights Act, Ohio Rev. Code § 4112.  (*Id.*, ¶¶ 90-134.)

On April 30, 2020, Defendant Tradesmen filed a Motion to Dismiss in Part and to Strike.[3] (Doc. No. 31.)  On June 1, 2020, Reese and Masiella filed a Brief in Opposition to Tradesmen's Motion.  (Doc. No. 34.)  Tradesmen filed a Reply in Support of its Motion on June 15, 2020.  (Doc. No. 35.)

On September 25, 2020, while Tradesmen's instant motion remained pending, this Court held an evidentiary hearing to determine whether an enforceable arbitration agreement existed between Masiella and Tradesmen.  On September 29, 2020, the Court found that an enforceable arbitration agreement existed between Masiella and Tradesmen.  (Doc. No. 43.)  Accordingly, the Court

---

[3] Also on April 30, 2020, McClone filed a Motion to Join Tradesmen's Motion to Dismiss in Part and to Strike.  (Doc. No. 32.)  Reese does not oppose this request.  The Court grants McClone's unopposed Motion.

5

dismissed Masiella's claims and ordered Masiella and Tradesmen to arbitration pursuant to the terms of the Arbitration Agreement.  (*Id.*)  Therefore, only one named plaintiff, Reese, remains in this case.

Tradesmen's Motion to Dismiss in Part and to Strike is now ripe for resolution.

## II.     Tradesmen's Motion to Dismiss

### A.     Legal Standard

The Court will first address Tradesmen's Motion to Dismiss in Part.  Tradesmen moves to dismiss certain of Reese's claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Under Fed. R. Civ. P. 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the Complaint in the light most favorable to the plaintiff.  *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'"  *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly*, 550 U.S. at 555-56, 127 S.Ct. 1955).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  Deciding whether a complaint

states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)) (quoting *Twombly*, 127 S.Ct. at 1964). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

### B. Analysis

#### 1. Discrimination Claims

Reese alleges that Defendants discriminated against her based on her gender in violation of the Ohio Civil Rights Act. (Doc. No. 29, ¶ 7.) The Court analyzes claims brought under the Ohio Civil Rights Act using the federal framework set forth in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, because "Ohio's requirements are the same as under federal law." *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008) (quoting *Carter v. Univ. of Toledo*, 349 F.3d 269, 272 (6th Cir. 2003)); *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 760 n.1 ("The Ohio Civil Rights Act mirrors Title VII in all relevant respects for Plaintiff's discrimination . . . claims."); *see* 42 U.S.C. §§ 2000e-2, 2000e-3; Ohio Rev. Code § 4112.02.

7

Defendants move to dismiss Reese's disparate impact discrimination claims and "pattern and practice" disparate treatment discrimination claims.  (Doc. No. 31, PageID# 635.)  Disparate impact (as Reese alleges in Count Three) and disparate treatment discrimination (as Reese alleges in Counts One and Three) are "'two distinct types of Title VII employment discrimination'" and so the Court addresses these separately.  *Serrano v. Cintas Corp.*, 699 F.3d 884, 892 (6th Cir. 2012) (quoting *Huguley v. Gen. Motors Corp.*, 52 F.3d 1364, 1370 (6th Cir. 1995)).

### a)        Disparate Impact Claim

In Count Three ("Gender Discrimination"), Reese alleges that Defendants' pattern and/or practice of gender discrimination had a disparate impact on Reese with respect to the terms and conditions of her employment.  (Doc. No. 29 at ¶ 119.)  Reese alleges that Defendants have treated Reese and the putative class members "differently from and less preferentially than similarly situated male employees with respect to, among other things, pay and promotions," thus disparately impacting female employees.  (*Id.* at ¶ 120.)

 In its Motion to Dismiss, Tradesmen argues that Reese failed to adequately plead her disparate impact claim.  (Doc. No. 31-1, PageID# 635.)  Tradesmen argues that Reese's disparate impact claim should be dismissed because she failed to identify a specific employment practice that allegedly disparately impacted Reese and the putative class she seeks to represent.  (*Id.*)  According to Tradesmen, Reese cannot meet her burden by pointing to a generalized policy but must isolate and identify the specific discriminatory employment practice that caused the disparate impact.  (*Id.* at PageID# 636-37.)  Tradesmen urges the Court to reject Reese's conclusory allegations and dismiss Reese's disparate impact claim.  (*Id.* at PageID# 638.)

In her Brief in Opposition, Reese does not address Tradesmen's argument that her disparate impact claim should be dismissed.

In its Reply, Tradesmen contends that Reese did not dispute that she failed to state a viable disparate impact claim.  (Doc. No. 35, PageID# 803.)  Accordingly, Tradesmen argues, the Court should consider Tradesmen's Motion to Dismiss Reese's disparate impact claim unopposed and grant Tradesmen's Motion.  (*Id.*)  The Court agrees that Reese's disparate impact claim should be dismissed.

First, Reese failed to respond to Tradesmen's motion to dismiss her disparate impact claim. The Court finds that Reese does not oppose Tradesmen's motion with respect to this claim.  *Lewis v. Cleveland Clinic Found.*, 1:12-cv-3003, 2013 WL 6199592, at *4 (N.D. Ohio Nov. 27, 2013) ("It is well understood ... that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (internal quotations omitted)); *see also Garmou v. Kondaur Cap. Corp.*, No. 15-12161, 2016 WL 3549356 at *7 (E.D. Mich. June 30, 2016) (finding that plaintiff conceded claims after failing to respond to defendants' arguments for dismissal of multiple claims).

Second, Reese's disparate impact claim fails as a matter of law because Reese failed to identify a specific employment practice that resulted in a disparity between male and female Tradesmen employees.  "Disparate impact claims involve facially neutral employment practices that have disproportionate impact on protected classes of individuals."  *Bowdish v. Cont'l Accessories, Inc.*, No. 91-1548, 1992 WL 133022, at *3 (6th Cir. June 12, 1992) (unpublished opinion).  A plaintiff asserting a disparate impact claim "need not" prove "discriminatory motive or intent."  *Serrano*, 699 F.3d at 892.  Instead, a plaintiff must demonstrate a connection between a specific employment

practice and resulting disparities between protected and non-protected classes.  *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 576 (6th Cir. 2004) (citing *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989)).

A disparate impact plaintiff "falls short by merely alleging a disparate impact, or 'point[ing] to a generalized policy that leads to such an impact.'"  *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 100 (2008) (quoting *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005)).  Instead, a disparate impact plaintiff must "'isolat[e] and identif[y] the *specific* employment practices that are allegedly responsible for any observed statistical disparities.'"  *Id.*  When a plaintiff fails to identify a specific employment practice, a plaintiff cannot make out a claim for disparate impact discrimination and the claim should be dismissed.  *See, e.g., EEOC v. Honda of Am. Mfg., Inc.*, No. 2:06-cv-00233, 2007 WL 1541364, at *5 (S.D. Ohio May 23, 2007).

The Court finds that Reese fails to identify a specific Tradesmen employment practice responsible for any observed disparities between male and female Tradesmen employees.  In Count Three, Reese alleges that Tradesmen's intentional disparate treatment "produced an unjustified disparate impact" on Reese and the putative class members and, as a result, Defendants treated them differently from "similarly situated male employees with respect to, among other things, pay and promotions." (Doc. No. 29, ¶¶ 117-20.)  However, Reese's general allegation that Tradesmen treated Reese and the putative class members differently "with respect to, among other things, pay and promotions," is analogous to the allegation in *EEOC v. Honda of Am. Mfg., Inc.*, in which the plaintiff generally alleged that minority candidates were denied equal job consideration but failed to identify a specific employment practice.  *Honda*, 2007 WL 1541364, at *5.  Like in *Honda*, Reese fails to

10

identify a specific employment practice and therefore, cannot state a claim for disparate impact discrimination.

Reese's factual allegations do "little more than point out that" there is an alleged difference between male and female employees' pay and promotion status. *See City of Jackson*, 544 U.S. at 241. For example, Reese alleges that that "Tradesmen developed, fostered, and encouraged a culture and working environment that objectifies women and relegates them to the 'service' of their male co-workers, supervisors and executive leadership." (Doc. No. 29, ¶ 10.) She also alleges that "[t]he system of advancement perpetuated at Tradesmen ensured that women were paid less than their male counterparts." (*Id.* at ¶ 18.) However, these allegations do not identify a single specific, facially neutral Tradesmen policy or practice that might have resulted in the alleged difference in pay and status between female and male Tradesmen employees. It is "not enough to simply allege that there is a disparate impact on workers" without also identifying the specific underlying employment practice that caused the disparity. *City of Jackson*, 544 U.S. at 241.

Further, Reese's disparate impact claim suffers from another fatal flaw, namely that she blends her disparate impact theory with her disparate treatment theory. In the Complaint, Reese claims that the Tradesmen policy that disparately impacted female employees was its alleged policy of "intentional disparate treatment." (Doc. No. 29, ¶¶ 117-20.) Assuming Reese's allegations that Tradesmen intentionally discriminated against female employees are true, then Tradesmen's purported practice of discrimination is anything but neutral. *See, e.g., Flatt v. Elec. Research Mfg. Corp.*, 103 F.3d 129 (Table), 1996 WL 694151, at *4 (6th Cir. 1996) (holding that district court correctly dismissed plaintiff's disparate impact claim where plaintiff based her claim on "the assertion that her employer 'had a practice of running off the women employees,'" which suggested an intent

11

to discriminate on the part of the defendant-employer and established a disparate treatment, but *not* a disparate impact, claim).

Reese cannot, as a matter of law, state a claim for disparate impact discrimination without "isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities." *Honda*, 2007 WL 1541364, at *5 (quoting *Wards Cove Packing Co.*, 490 U.S. at 656 (internal quotations omitted)). *See also Reminder v. Roadway Express, Inc.*, 215 F. App'x 481, 485 (6th Cir. 2007) (affirming district court's conclusion that plaintiff failed to state a disparate impact claim when the plaintiff only alleged that "a disparate proportion of those employees terminated from the marketing and sales departments on or about September 26 and 29, 2003 . . . were over forty years of age compared to those retained"). Accordingly, the Court dismisses Reese's disparate impact discrimination claim as set forth in Count Three.

### b)      Disparate Treatment "Pattern/Practice" Claims

In Count One ("Sexual Harassment/Hostile Work Environment"), Reese alleges that Tradesmen, acting through McClone and other male employees, sexually harassed Reese by subjecting her to "unwelcome and harassing conduct on the basis of [her] gender." (Doc. No. 29, ¶ 91.) As a result, "Defendants have engaged in an intentional, company-wide pattern and/or practice of discrimination." (*Id.*) In Count Three ("Gender Discrimination"), Reese alleges that Defendants engaged in disparate treatment, including "denial of promotions, unequal pay and even employment termination," based on her gender. (*Id.*, ¶ 117.) Reese also alleges that Defendants engaged in an intentional, company-wide pattern and/or practice of gender discrimination against her and the putative class members. (*Id.* at ¶ 118.)

12

In its Motion to Dismiss, Tradesmen argues, first, that Reese failed to plead sufficient facts to sustain her pattern/practice disparate treatment claim.  (Doc. No. 31-1, PageID# 635.)  Tradesmen argues that Reese did not allege any facts demonstrating that sex discrimination was Tradesmen's "standard operating procedure," applicable to the entire purported class, rather than mere isolated or sporadic acts.  (*Id.* at PageID# 638.)  Tradesmen argues that Reese's allegations relating to the putative class members are conclusory and unsupported by any facts. (*Id.*)  Tradesmen further argues that Reese's only factual allegations relate to alleged isolated discrimination that Reese herself experienced and were therefore "not the result of a company-wide policy or practice, but were sporadic incidents related to" McClone's persistent sexual advances towards Reese.  (*Id.* at PageID# 639-40.)  Accordingly, Tradesmen urges the Court to dismiss Reese's claim for pattern or practice disparate treatment discrimination.  (*Id.*)

Reese argues in her Brief in Opposition that she plead sufficient facts to sustain her pattern and practice claims under Ohio law.  (Doc. No. 34, PageID# 677.)  Reese argues that the Complaint contains averments from three different women, all describing "a pattern and practice of discrimination that affected the terms and conditions of their employment."  (*Id.*)  Reese also argues that the cases Tradesmen cited in its Motion do not support a dismissal under Fed. R. Civ. P. 12(b)(6), and indeed, may support denying Tradesmen's Motion instead.  (*Id.* at PageID# 677-78.)  Reese argues that the Complaint provided Defendants with adequate notice of the challenged actions, that the discovery process will reveal additional details and witnesses, and that she need not allege every detail at the pleading stage to proceed.  (*Id.* at PageID# 678-79.)

Tradesmen replies that Reese fails to meet the pleading requirements because she offers only facts related to isolated incidents involving three individuals, rather than facts related to a company-

wide pattern or practice of discrimination. (Doc. No. 35, PageID# 801.) Next, Tradesmen argues that Reese's argument that the Complaint was "specific enough" misses the point because, even when the Complaint is viewed in the light most favorable to Reese, the Complaint still only relates to unique, individualized allegations of discrimination and fails to identify a Tradesmen policy that applied to the entire putative class. (*Id.*) Third, Tradesmen argues that while the Complaint relates mostly to Reese's alleged interactions with McClone, the pattern and practice claim is not based on such conduct. (*Id.*) Therefore, Tradesmen argues, Reese has failed to state a claim on behalf of anyone other than herself and the Court should not permit Reese to proceed to discovery to conduct a fishing expedition for claims she has not and cannot assert. (*Id.*) Finally, Tradesmen argues that Reese's attempts to distinguish Tradesmen's cases are meritless. (*Id.*)

Disparate treatment claims "involve intentionally discriminatory employment practices." *Bowdish*, 1992 WL 133022, at \*3. A plaintiff asserting a disparate treatment claim against an employment "must prove discriminatory motive or intent" on the part of the employer. *Serrano*, 699 F.3d at 892. A plaintiff may show "discriminatory intent for disparate-treatment claims either through direct or circumstantial evidence." *Id.* (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12, (2002); *Foster v. Cuyahoga Cnty. Bd. of Comm'rs*, No. 97-3504, 1998 WL 57481, at \*1 (6th Cir. Feb. 3, 1998) (unpublished opinion) ("To advance a disparate treatment claim, a plaintiff must show that the employer has a discriminatory motive, which may be shown by direct evidence or through inference based on a prima facie showing of discrimination.") (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)), cert. denied, 525 U.S. 937 (1998)).

14

A plaintiff may establish intentional discrimination through circumstantial evidence by utilizing certain evidentiary frameworks.  Regarding these evidentiary frameworks, the Sixth Circuit wrote:

> Both *McDonnell Douglas* [*v. Green*] and [*Int'l Bhd. Of*] *Teamsters* [*v. United States*] provide frameworks through which a plaintiff can prove intentional discrimination through circumstantial evidence. *See Birch v. Cuyahoga Cnty. Probate Ct.*, 392 F.3d 151, 165 (6th Cir. 2004) ("[T]he *McDonnell Douglas* . . . paradigm [is] utilized for intentional discrimination cases premised solely on circumstantial evidence."); *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 183 (3rd Cir. 2009) ("The *Teamsters* framework was judicially promulgated as a method of proof for pattern-or-practice claims brought by the government under Title VII, as that statute authorizes—it provides a means by which courts can assess whether a particular form of statutorily prohibited discrimination exists, just as the *McDonnell Douglas* framework does for individual claims of disparate treatment." (emphasis added)); *Ekanem v. Heath & Hosp. Corp. of Marion Cnty., Ind.*, 724 F.2d 563, 575 (7th Cir. 1983) ("The 'pattern or practice' theory of proof set forth in *Teamsters* and its progeny affords plaintiffs wide latitude in attempting to establish circumstantial evidence of unlawful intent.").

*Serrano*, 699 F.3d at 892.

According to the Sixth Circuit:

> The *Teamsters* framework is distinct. It charges the plaintiff with the higher initial burden of establishing "that unlawful discrimination has been a regular procedure or policy followed by an employer or a group of employers." [*Int'l Bhd. Of*] *Teamsters* [*v. United States*], 431 U.S. [324,] 360 [1977]. Upon that showing, it is assumed "that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy" and, therefore, "[t]he [plaintiff] need only show that an alleged individual discriminatee unsuccessfully applied for a job." *Id.* at 362, 97 S.Ct. 1843. The burden then shifts to "the employer to demonstrate that the individual applicant was denied an employment opportunity for lawful reasons." *Id.* . . . .

*Id.* at 893.

Importantly, "*Teamsters* provides an evidentiary framework pursuant to which the EEOC may seek to prove its allegations of intentional discrimination, **not an independent cause of action**."  *Id.* at 898 (emphasis added).  At the pleading stage, Reese's complaint "need not present 'detailed factual

15

allegations,' [but] it must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference,' *Iqbal*, 556 U.S. at 678, 679, 129 S.Ct. 1937, that [Tradesmen] 'discriminate[d] against [Reese] with respect to [her] compensation, terms, conditions, or privileges of employment, *because of* [her] race, color, religion, sex, or national origin.'" *Keys v. Humana*, 684 F.3d 605, 610 (6th Cir. 2012) (quoting 42 U.S.C. § 2000e-2(a)(1)).

The Court finds that Reese alleged sufficient facts to state a plausible disparate treatment claim. The Complaint details a pattern of discrimination on the part of Tradesmen, related to an episode of harassment targeted at Reese by her Tradesmen supervisor McClone, in which McClone "propositioned Reese to come back to his house and 'get drunk and dirty.'" (Doc. 29, ¶ 72.) Reese alleges that, after she rejected McClone's sexual advances, she suffered several adverse employment actions—including a significantly increased workload, decreased pay, unwarranted discipline, and, ultimately, dismissal—as a result of retaliatory harassment on the part of McClone and a refusal to intervene in the harassment on the part of Tradesmen and its Human Resources department. (*Id.* at ¶¶ 74-80.) Further, Reese alleges that she and other female employees were subjected to pervasive sexual harassment perpetrated by McClone, as well as other Tradesmen managers, executives, and colleagues, including verbal and physical harassment and sexual advances, while employed by Tradesmen. (*Id.* at ¶¶ 11-13, 90-101.)

Both parties' characterizations of Reese's disparate treatment claims as "pattern or practice claims" appear to misapprehend *Teamsters*'s "pattern or practice" framework as creating a freestanding cause of action (e.g., a "Pattern or Practice Discrimination Claim"). It does not. *Teamsters*'s "pattern or practice" framework is "an evidentiary framework . . . not an independent

16

cause of action."  *Serrano*, 699 F.3d at 898; *see also EEOC v. FedEx Ground Package Sys.*, 158 F. Supp. 3d 393, 403 (W.D. Penn. 2016) ("[P]attern or practice is not itself a legal claim.").[4]  As discussed above, at the pleading stage, Reese need only state a plausible claim of disparate treatment. Under Supreme Court and Sixth Circuit precedent, Reese does not need to commit to a particular evidentiary framework at the pleading stage.  *See Swierkiewicz*, 534 U.S. at 508-10 (holding that an employment discrimination complaint "need not" "contain specific facts establishing a prima facie case of discrimination" under the *McDonnell Douglas* framework and instead "must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"); *see also Serrano*, 699 F.3d at 898 ("*Swierkiewicz* compels the conclusion that a plaintiff is not required to plead whether she intends to employ the *McDonnell Douglas* or the *Teamsters* burden-shifting evidentiary framework.").

At this stage, Reese has adequately plead a disparate treatment claim within Counts One and Three.  Therefore, Tradesmen's motion to dismiss her disparate treatment claim is denied.

---

[4] The Court notes that Tradesmen's arguments closely mirror FedEx's arguments in *EEOC v. FedEx Ground Package Sys.*  In that case, FedEx attempted to categorize the collective plaintiffs' discrimination claims as either "(1) discrimination relating to a specific discriminatory procedure or policy that can be proven only with the *Teamsters* evidentiary framework, or (2) claims that do not identify a specific procedure or policy and thus cannot, under any circumstances, be subject to any form of collective treatment."  *EEOC v. FedEx Ground Sys., Inc.*, 158 F. Supp. 3d 393, 403 (W.D. Penn. 2016).  Tradesmen makes a similar argument in its Motion that "[a]side from the anecdotal and varied allegations of discrete acts of purported discrimination offered as to Masiella, Reese, and Class, Plaintiff[ ] fail[s] to allege sufficient factual allegations that sex discrimination was Tradesmen's 'standard operating procedure' or that discriminatory conduct was a pattern or practice across the company and applicable to the entire class Plaintiff[ ] seek[s] to represent." (Doc. No. 31-1, PageID# 640.)  However, as the *FedEx* court noted, "[f]atal to FedEx Ground's attempt to pigeonhole this case into being one about a 'pattern or practice' is the Supreme Court's pronouncement that federal court complaints need not commit to a specific evidentiary framework, especially where the appropriate one may not become apparent until after discovery."  *FedEx Ground Sys., Inc.*, 158 F. Supp. 3d at 403 (citing *Swierkiewicz*, 534 U.S. at 508-10).

2.     **Aiding and Abetting Claim**

In Count Four ("Aiding and Abetting Discrimination"), Reese alleges that the Defendants, including Tradesmen and McClone, aided and abetted discriminatory conduct against her based on her gender.  (Doc. No. 29, ¶¶ 126, 132-33.)  Put another way, Reese alleges that McClone aided and abetted Tradesmen in discriminatory conduct, and also that Tradesmen aided and abetted McClone in discriminatory conduct.

Tradesmen argues that a corporate entity cannot, as a matter of law, aid and abet itself in discriminating against an employee.  (Doc. No. 31-1, PageID# 641.)  Therefore, Tradesmen cannot aid and abet the allegedly discriminatory conduct of its employees, including McClone and other unidentified male Tradesmen employees, because that would be tantamount to Tradesmen aiding and abetting itself.  (*Id.*)  Thus, Tradesmen asserts that Reese's aiding and abetting claim should be dismissed.  (*Id.*)

Reese, in her Brief in Opposition, argues she asserted that McClone aided and abetted Tradesmen, and also that Tradesmen aided and abetted McClone, in their respective discriminatory conduct.  (Doc. No. 34, PageID# 680.)  Further, Reese argues that Tradesmen's citations to civil conspiracy caselaw are inapposite, as she did not allege civil conspiracy in her complaint.  (*Id.* at PageID# 679.)

Tradesmen replies that Reese misconstrues Tradesmen's cited case law, as well as Reese's own allegation, "in an attempt to rescue [her] legally impermissible claim."  (Doc. No. 35, PageID# 806.)  Tradesmen argues that Reese "concede[s]" that her claims rest on the actions of McClone and other Tradesmen employees, and thus, the aiding and abetting claim should be dismissed.  (*Id.*)  Tradesmen also argues that Reese impermissibly attempts to amend the Complaint when she

describes Tradesmen and McClone as "distinct and separate parties" in her Brief in Opposition, but alleged in her Complaint that Tradesmen should be held liable for McClone's acts as an employee. (*Id.*) Finally, Tradesmen argues that because Reese alleged that McClone acted in his official capacity as an employee, Reese failed to state a claim for Tradesmen aiding and abetting his conduct. (*Id.* at PageID# 807.)

The Court agrees with Tradesmen that, as a matter of law, it cannot aid and abet itself in discriminating against Reese. The Court dismisses Reese's aiding and abetting claim as to Tradesmen. However, the Court will not dismiss Reese's aiding and abetting claim against McClone for the following reasons.

Ohio Revised Code § 4112.02(J) makes it unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice." Ohio Rev. Code § 4112.02(J). To be held liable under this provision, "an individual defendant must be 'involved in or actually [have] made the decision to [discriminate or] retaliate against [the employee].'" *Oster v. Huntington Bancshares, Inc.*, No. 2:15-cv-2746, 2017 WL 2215462, *22 (S.D. Ohio May 19, 2017) (quoting *Cummings v. Greater Cleveland Reg'l Transit Auth.*, 88 F. Supp. 3d 812, 820 (N.D. Ohio 2015), *Sampson v. Sisters of Mercy Willard, Ohio*, No. 3:12-cv-824, 2015 WL 3953053, at *9-10 (N.D. Ohio June 29, 2015)). A corporate entity may not aid and abet itself in discriminating against a plaintiff. *See Sampson*, 2015 WL 3953053, at *10. However, "O.R.C. § 4112.02(J) does provide for *employees* . . . to be held liable for aiding and abetting its *employer's* discriminatory or retaliatory practices." *Siwik v. Cleveland Clinic Foundation*, No: 1:17-cv-1063, 2019 WL 1040861, at *27 (N.D. Ohio Mar. 5, 2019) (emphasis added) (citing *Hauser v. Dayton Police Dep't*, 140 Ohio St.3d 268, ¶12 (2014) (finding O.R.C. §

4112.02(J) "holds individual employees liable for their participation in discriminatory practices.")). *See also Woodworth v. Time Warner Cable, Inc.*, 2015 WL 6742085, \*3 (N.D. Ohio Nov. 2, 2015).

Tradesmen correctly states that it, as a corporate entity, cannot aid and abet itself in discriminatory conduct. *See, e.g., Sampson*, 2015 WL 3953053, at \*10. However, the Court is not persuaded by Tradesmen's argument that McClone also cannot be held liable for aiding and abetting Tradesmen because McClone acted in his "official capacity as an employee." Tradesmen bases this argument on a misinterpretation of *Bower v. MetroParks of Butler County*. In *Bower*, the plaintiff brought a disability discrimination claim against the MetroParks of Butler County, the Board of Park Commissioners, and his former supervisor, Granville, the Executive Director of the MetroParks. *Bower v. MetroParks of Butler Cty.*, No. 1:18-cv-00791, 2019 WL 2772544, at \*1 (S.D. Ohio July 2, 2019), *report and recommendation adopted*, 2019 WL 4097228 (S.D. Ohio Aug. 29, 2019). The plaintiff also brought a claim under § 4112.02(J) against Granville, alleging that Granville, as an individual employee of the MetroParks, aided and abetted discriminatory conduct, including wrongfully terminating the plaintiff in violation of the Americans with Disabilities Act. *Id.*, at \*8. The court denied Granville's motion to dismiss the aiding and abetting claim and rejected Granville's argument that Granville could not be held liable because he acted as an agent of the MetroParks. *Id.* at \*8-9. Although Tradesmen argues that Reese's claim against McClone should be dismissed because the *Bower* plaintiff's "claim against Granville in his official capacity under § 4112.02 should be dismissed," (Doc. No. 35, PageID# 807), the full context of the quote further supports Reese's contention that her aiding and abetting claim against McClone should not be dismissed:

> For the reasons discussed supra, **plaintiff has adequately pled a disability discrimination claim against Granville in his individual capacity under § 4112.02(J).** However, plaintiff does not allege that he seeks to hold Granville liable in his official capacity for the acts alleged in the complaint under any other provision

20

of § 4112.02. Thus, plaintiff's claim against Granville in his official capacity under § 4112.02 should be dismissed.

*Bower*, 2019 WL 2772544, at *9 (emphasis added).

Reese pleaded that McClone, an employee of Tradesmen, sexually harassed her and then retaliated repeatedly against her, culminating in McClone's allegedly discriminatory termination of Reese's employment in 2014.  (Doc. No. 29, ¶¶ 67-80.)  Accepting the Complaint's allegations as true, Reese has pleaded sufficient facts to support the imposition of individual liability on McClone for gender discrimination under § 4112.02(J).  *See, e.g., Bower*, 2019 WL 2772544, at *8; *see also Woodworth v. Time Warner Cable, Inc.*, No. 1:15-cv-1685, 2015 WL 6742085, at *3 (N.D. Ohio Nov. 2, 2015).

Further, Tradesmen's discussion of civil conspiracy case law is unavailing.  It is true that the court in *Sampson v. Sisters of Mercy Willard, Ohio* drew a comparison to civil conspiracy case law to further illustrate why the employer-defendant could not aid and abet itself as a corporate entity. *Sampson*, 2015 WL 3953053, at *10.  However, in *Sampson*, the *only* named defendant was a corporate entity.  *Id.*  The plaintiff's claim ultimately failed as a matter of law because she failed to bring an aiding and abetting claim against an individual "person" as contemplated by the text of Ohio Rev. C. § 4112.02(J).  *Id.*  In this case, Reese brought an aiding and abetting claim against a corporate defendant, which fails as a matter of law, and against an individual employee, which does not fail as a matter of law.  *Id.*

Tradesmen's motion to dismiss Reese's aiding and abetting claim is granted as to Tradesmen and denied as to McClone.

### III.     Tradesmen's Motion to Strike Class Allegations and Class Definition

#### A.     Legal Standard

The Court now addresses Tradesmen's Motion to Strike Reese's Class Allegations and Class Definition.  Federal Rule of Civil Procedure 23 governs class actions brought in federal court.  "To obtain class certification, a claimant must satisfy two sets of requirements: (1) each of the four prerequisites under Rule 23(a), and (2) the prerequisites of one of the three types of class actions provided for by Rule 23(b)."  *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945-46 (6th Cir. 2011).  Reese seeks certification under both Rule 23(b)(2) and Rule 23(b)(3).  (*See* Doc. No. 29 at ¶¶ 43-51.)

Rule 23(a) requires that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

Rule 23(b)(2) and Rule 23(b)(3) require, respectively, that:

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

"Rule 23 does not set forth a mere pleading standard," and "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  In addition, "certification is proper only if 'the trial court is satisfied, after a rigorous analysis,'" that all prerequisites have been satisfied.  *Id.* at 350-51 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982)).  Pursuant to Rule 23(c)(1)(A), courts should make such a determination "[a]t an early practicable time."  "Either party may freely move for resolution of the class-certification question at any stage of the proceedings, and the class action allegations may be stricken prior to a motion for class certification where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."  *Rikos v. Procter & Gamble Co.*, No. 1:11-cv-226, 2012 WL 641946, at *3 (S.D. Ohio Feb. 28, 2012).

### B.    Analysis

#### 1.    Class Allegations

Tradesmen moves to strike Reese's class allegations because Reese's claims are highly individualized and, therefore, are facially deficient.  (Doc. No. 31-1, PageID# 644.)  Tradesmen argues that the Court need not wait until class certification to determine the viability of a class action when the complaint is facially defective.  (*Id.*)  According to Tradesmen, Reese cannot establish either commonality or typicality under Fed. R. Civ. P. 23(a) because her hostile work environment and retaliation claims are highly individualized and would require "mini-trials" for each class member.  (*Id.* at PageID# 648-49.)

In her Brief in Opposition, Reese argues that federal courts disfavor striking class allegations at the pleading stage.  (Doc. No. 34, PageID# 680.)  Reese further argues that courts have found Rule 23(a)'s commonality requirement satisfied in circumstances where class members share both common experiences, as well as individualized circumstances.  (*Id.* at PageID# 682.)  Reese argues that the questions common to all class members will relate to the alleged hostile environment that existed within Tradesmen's culture and that it would be premature to dismiss these class claims without discovery.  (*Id.* at PageID# 682-83.)  Further, Reese argues that her claims are typical to those of class members because her claims revolve around the same sexual harassment that Reese alleges was pervasive at Tradesmen.  (*Id.* at PageID# 684.)

In its Reply, Tradesmen reiterates its arguments that it is not premature to strike Reese's class allegations at the pleading stage when such allegations are facially defective and that Reese cannot establish commonality or typicality with respect to her hostile work environment claim.  (Doc. No. 35, PageID# 807, 812.)  Further, Tradesmen argues that the Supreme Court rejected the argument that an employee may establish commonality through an employer's "culture" in *Wal-Mart v. Dukes*.  (*Id.* at PageID# 814.)

While the Court may strike class allegations prior to a motion to certify, the Court declines to do so at this early stage.  Tradesmen is correct that a court may strike class action allegations prior to a motion for class certification "where the complaint itself demonstrates that the plaintiff cannot meet the requirements for maintaining a class action."  *Johnson v. Geico Choice Ins. Co.*, No. 1:18-cv-1353, 2018 WL 6445617, at *4 (N.D. Ohio Dec. 10, 2018) (citing *Pilgrim*, 660 F.3d at 949 (6th Cir. 2011); *see also Meyers v. Ace Hardware, Inc.*, 95 F.R.D. 145, 150 (N.D. Ohio 1982); Fed. R. Civ. P. 23(c)(1) (the court must, "[a]t an early practicable time," determine "whether to certify the action as

a class action.").  However, in *Pilgrim*, the Sixth Circuit also noted that district courts still have a duty to "engag[e] in a 'rigorous analysis' of the question, and 'sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.'"  *Pilgrim*, 660 F.3d at 949 (quoting *Falcon*, 457 U.S. at 161).

Other courts in this Circuit have applied caution when ruling on Motions to Strike Class Allegations prior to class certification briefing.  *See, e.g., Legrand v. Intellicorp Records, Inc.*, No. 1:15-cv-2091, 2016 WL 1161817, at *4 (N.D. Ohio Mar. 24, 2016) (finding that, at the pleading stage, the court could not conclude as a matter of law that individual issues would predominate over common issues, and concluding "[a]s is generally the case, this balance can be better evaluated after discovery."); *Eliason v. Gentek Bldg. Prod., Inc.*, No. 1:10-cv-02093, 2011 WL 3704823, at *3 (N.D. Ohio Aug. 23, 2011 ("'A motion to strike class allegations is not a substitute for class determination and should not be used in the same way.'") (quoting *Faktor v. Lifestyle Lift*, No. 1:09-cv-511, 2009 WL 1565954, at *2 (N.D. Ohio June 3, 2009)); *Geary v. Green Tree Serv., LLC*, No. 2:14-cv-00522, 2015 WL 1286347, at *17 (S.D. Ohio Mar. 20, 2015) ("The Court deems it prudent to assess the propriety of class certification in the context of a fully briefed class certification motion rather than in the context of a motion to strike class claims at the pleading stage.").

Tradesmen argues that *Eliason*, *Faktor*, and *Geary* are "inapposite" because each of these cases dealt with "motions to dismiss or to strike based on factual insufficiency as opposed to a primarily legal question like the one at issue here."  (Doc. No. 35, PageID# 808-09.)  Tradesmen's "primarily legal question" appears to be whether Reese's class allegations are facially defective.  (*Id.*, citing its Motion to Dismiss, Doc. No. 31-1, PageID# 642-44.)  However, beyond Tradesmen's conclusory statement that Reese's pleadings are "facially defective and definitively establish that a

25

class action cannot be maintained," Tradesmen does not explain *why* Reese's class allegations are facially defective within pages 12-14 of its Motion. (Doc. No. 31-1, PageID# 642-44.) Instead, most of Tradesmen's arguments in favor of striking Reese's class allegations relate to Tradesmen's contention that Reese cannot establish commonality or typicality under Fed. R. Civ. P. 23(a). Whether a plaintiff can establish commonality, typicality, and Fed. R. Civ. P. 23(a)'s other prerequisites is not a purely legal question, but rather one that "'generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Dukes*, 564 U.S. at 351 (quoting *Falcon*, 457 U.S., at 160). Tradesmen has not demonstrated that Reese's class allegations are facially defective. Deciding whether Reese has established commonality and typicality is a question more prudently reserved for a "fully briefed class certification motion rather than in the context of a motion to strike class claims at the pleading stage." *Geary*, 2015 WL 1286347, at *17.

Additionally, Tradesmen's reliance on *Elkins v. Am. Showa Inc.*, *Freeman v. Delta Airlines, Inc.*, and *Van v. Ford Motor Co.* to support its argument that Reese cannot establish commonality and typicality is particularly problematic at the pleading stage because none of these cases involve motions to strike. Instead, these cases involve Motions for Class Certification, which were presented to the courts after discovery and full briefing. Tradesmen relies heavily on these cases to argue that Reese's hostile work environment and retaliation claims are too highly individualized and therefore preclude a finding of commonality and typicality. (Doc. No. 31-1, PageID# 644-45.) However, in these cases, none of the courts concluded that the plaintiffs could not bring hostile work environment or retaliation class allegations as a matter of law. Rather, the courts concluded that the plaintiffs

26

failed to meet Fed. R. Civ. P. 23's prerequisites because each set of plaintiffs failed to offer up sufficient evidence (after conducting discovery) to establish commonality and/or typicality.

For example, in *Elkins*, the court did not hold that all hostile work environment claims are not conducive to class-wide treatment.  Rather, the court concluded that "[w]hether an individual was subjected to a hostile work environment is a highly fact-intensive inquiry which requires consideration of the frequency, severity, and nature of the conduct, including whether it was physically threatening or humiliating or a mere offensive utterance. **Plaintiffs have failed to offer evidence which establishes that the plant-wide environment was hostile.**"  *Elkins v. Am. Showa Inc.*, 219 F.R.D. 414, 423-24 (S.D. Ohio 2002) (emphasis added).  In *Freeman*, the court concluded that the plaintiffs' anecdotal evidence at the class certification stage was insufficient to establish commonality for plaintiffs' hostile work environment and retaliation claims.  *Freeman v. Delta Airlines, Inc.*, No. 2:15-cv-160, 2019 WL 2495471, *16 (E.D. Ky. June 14, 2019).  Similarly, in *Van*, the court concluded that the plaintiffs' hostile work environment evidence did not establish an objectively hostile environment because the plaintiffs and putative class members were exposed to a wide range of purported misconduct across several different manufacturing plants.  *Van v. Ford Motor Co.*, 332 F.R.D. 249, 276-77 (N.D. Ill. 2019).  Thus, when the *Elkins*, *Freeman*, and *Van* courts engaged in the "rigorous analysis" of determining whether to certify the classes, the courts did so with the benefit of thorough class certification briefing.

The Court expresses no opinion at this time as to whether Reese will be able to carry her burden at the class certification stage.  Indeed, the Court cannot express such an opinion because, at this juncture, it is premature to determine whether Reese will be able to do so based on the face of

27

the pleadings alone. The Court will adjudicate Tradesmen's class certification arguments at the class certification stage.

### 2. Class Definition

Tradesmen asks the Court to strike Reese's class definition as overbroad because it captures a nationwide class of female Tradesmen employees, rather than limiting the class to female employees who were allegedly harmed in Ohio. (Doc. 31-1, PageID# 651.) Reese argues that her class definition seeks only to include individuals eligible to bring claims under the Ohio Civil Rights Act and that it falls squarely within the guidance that this Court set forth in its February 19, 2020 Order. (Doc. No. 34, PageID# 684; *see also* Doc. No. 25.) Reese argues that it is improper for Defendants to attempt to strike the class definition at the pleadings stage and before any class discovery has been conducted. (*Id.* at PageID# 685.) Rather, Reese contends that once initial class discovery is completed, the parties may debate the precise delineations of the class definition. (*Id.*) In its Reply, Tradesmen reiterates its argument that Reese's class definition is overbroad and also argues that Reese's class definition creates an impermissible "fail-safe" class. (Doc. No. 35, PageID# 815.) Tradesmen also urges the Court to decline Reese's invitation to amend the class definition itself. (*Id.* at PageID# 815-16.) Reese's class definition proposes a nationwide class of female Tradesmen employees who have passed through the Macedonia, Ohio headquarters at least once. This definition is overbroad and cannot be maintained.

All of Reese's claims are based on the Ohio Civil Rights Act. (Doc. No. 29, ¶ 7.) As the Court noted in its February 19, 2020 order, application of the Ohio Civil Rights Act to a nationwide class of female Tradesmen employees would raise serious constitutional concerns. (Doc. No. 25, PageID# 535, citing *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1063-66 (N.D. Cal. Aug. 7, 2014)).

Although Reese attempts to limit the class to female Tradesmen employees who worked out of Tradesmen's Macedonia, Ohio office, Reese's definition remains overbroad.[5]  Reese's Complaint defines the class as follows:

> The Proposed Rule 23 Class consists of all females who are, have been, or will be employed by Tradesmen and who worked out of Tradesmen's corporate headquarters in Macedonia, Ohio, during the applicable liability period until the date of judgment.

(Doc. No. 29, ¶ 19.)  This definition still unambiguously captures a nationwide class of all Tradesmen female employees.  Reese cannot impose the Ohio Civil Rights Act on Tradesmen employees who do not fall within its bounds and therefore, striking Reese's class definition is appropriate.

Reese's definition is problematic because it sweeps up any female Tradesmen employee who has worked in any capacity and at any time in the Macedonia, Ohio corporate headquarters.  As Tradesmen points out, Reese does not impose any limits on what "worked out of Tradesmen's corporate headquarters" means.  (Doc. No. 31-1, PageID# 636.)  Tradesmen argues that, on its face, Reese's definition "necessarily includes employees who worked out of the headquarters in Ohio irregularly, sporadically, or only one time during the relevant time period, but who resided and allegedly suffered injuries in other states."  (*Id.*)  Reese argues that it is Tradesmen who attempts to

---

[5] The Court is not persuaded by Tradesmen's argument on Reply that Reese's proposed class definition is a "fail-safe" class.  *See Randleman v. Fidelity Nat. Title Ins. Co.*, 646 F.3d 347, 352 (a "fail-safe" class is one that "shields the putative class members from receiving an adverse judgment," such that "[e]ither the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment.").  As discussed *infra*, Reese's class definition is problematic because it still proposes a nationwide class of female employees.  The Court does not read Reese's proposed class definition to be one where class membership is dependent on the validity of a putative member's claim.  *See Sauter v. CVS Pharmacy, Inc.*, No. 2:13–cv–846, 2014 WL 1814076, at *6 (S.D. Ohio May 7, 2014) (discussing *Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 294 (N.D. Ill. 2014).  Even if Reese's class definition *was* an impermissible "fail-safe" class, the fail-safe problem "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis."  *Id.* at *9 (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814 (7th Cir. 2012)).

expand the definition, not Reese, but the Court finds Reese's argument here unpersuasive.[6]  Reese's definition sets no requirements on the frequency or length of time that an employee may have worked in the Macedonia, Ohio office, nor any limitation on the residency of potential class members. Therefore, on its face, the definition sweeps up any female Tradesmen employee who has passed through Tradesmen's corporate headquarters at any point in her employment, even if that employee lives and works primarily in another state.

Therein lies the problem.  Reese argues that any female Tradesmen employee who may have worked out of Tradesmen's Macedonia, Ohio headquarters "would be within the pool of individuals who may have been subject to any discrimination practices or activity that occurred" in Macedonia, Ohio.  (Doc. 34, PageID# 685.)  Put another way, Reese argues that, so long as any female Tradesmen employee performed any modicum of work at Tradesmen's corporate headquarters for any length of time during the applicable liability period, that employee may be able to bring a claim against Tradesmen under Ohio law.  That is not so.

Under Ohio law, a claim for employment discrimination is treated as a tort claim.  *Kirk v. Shaw Envt'l., Inc.*, No. 1:09-cv-1405, 2010 WL 2162018, at *5 (N.D. Ohio May 25, 2010).  Under Ohio's choice-of-law rules, there is a presumption that the law of the place of injury controls, unless

---

[6] The Court also notes—as it did in its February 19, 2020 Order—that Reese's Complaint *still* indicates an intention not to limit the class to employees who may be entitled to raise a claim under Ohio law:

> Upon information and belief, Tradesmen's employment policies, practices, and procedures are not unique or limited to any office; rather, they apply uniformly and systematically to employees throughout the company, occurring as a pattern and practice throughout all office locations.  They thus affect the Class Representatives and Class members in the same ways regardless of the office location in which they work.

(Doc. No. 29, ¶ 33.)  Reese's Complaint still spells out a much broader scope of the class definition than is proposed in the definition.

another state has a more significant relationship to the lawsuit.[7]  *Morgan v. Biro Mfg. Co.*, 15 Ohio St. 3d 339, 342, 474 N.E.2d 286 (1984).  The location of an injury to employment is where the employee primarily lived and worked.  *See, e.g., Kirk*, 2010 WL 2162018, at *5 (concluding that the plaintiff's injury occurred in Ohio because the plaintiff primarily resided in Ohio and worked out of an Ohio-based office at the time of his alleged discriminatory termination); *Reilly v. Alcan Aluminum Corp.*, No. 98-3566, 1999 WL 313879, at *3 (6th Cir. 1999) (finding that "an inquiry into the place where the injury occurred unequivocally points to the preeminence of Georgia's interests," where the plaintiff lived and worked for six years prior to his allegedly wrongful termination); *Walker v. Nationwide Mut. Ins. Co.*, No. 16AP-894, 2018 WL 2113629, at *4 (Ohio App. 10th Dist. 2018) ("Walker lived and worked in Tennessee at the time his employment was terminated.  Thus, a presumption arises that the law of Tennessee applies to his wrongful termination claims."); *Hoyt*, 2005 WL 3220192, at *6 (finding that New Jersey, not Ohio, law applied because the plaintiff lived and worked in New Jersey).  Under Ohio's choice-of-law rules, a female Tradesmen employee who primarily lives and works in another state, and who travels to Tradesmen's Macedonia, Ohio headquarters and allegedly suffers an injury to her employment, is presumed to have a claim under the laws of her home state, not the laws of Ohio.

---

[7] The Restatement (Second) of Conflicts "incorporates the general principle that 'the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties' should be applied in tort situations."  *Reilly v. Alcan Aluminum Corp.*, No. 98-3566, 1999 WL 313879, at *3 (6th Cir. 1999) (quoting Restatement (Second) of Conflicts of Laws, § 145(2)).  To determine which state has the most significant relationship, Ohio courts analyze the following Restatement factors: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  *Id.*  "[T]hese contacts are to be evaluated according to their relative importance with respect to the particular issue."  *Id.*  The place where the injury occurred (factor one) is presumed to be the state with the most significant relationship to the lawsuit unless the other three factors outweigh the first factor.  *See Hoyt v. Nationwide Mut. Ins. Co.*, No. 04AP–941, 2005 WL 3220192, at *6 (Ohio App. 10th Dist. 2005).

*Hoyt v. Nationwide Mut. Ins. Co.* illustrates this point.  In *Hoyt*, a plaintiff lived and worked primarily in New Jersey, but traveled to Ohio for work multiple times.  *Hoyt v. Nationwide Mut. Ins. Co.*, No. 04AP–941, 2005 WL 3220192, at *2-4 (Ohio App. 10th Dist. 2005).   The plaintiff alleged that, during multiple trips to Ohio, a colleague subjected her to repeated sexual harassment.  *Id.* The plaintiff alleged that she was subjected to sexual harassment that adversely affected her employment and that her employment was wrongfully terminated.  *Id.* at *5.  The plaintiff asserted that Ohio law, not New Jersey law, applied because the harassment occurred in Ohio, among other reasons.  *Id.* at *6.  However, the court disagreed.  The court found that the plaintiff sustained the injury to her employment in New Jersey, because she "lived and worked in New Jersey."  *Id.* at *6.  The fact that the harassment occurred in Ohio, among other reasons, was not enough to overcome the presumption that the injury occurred in New Jersey.  *Id.*   Similarly, Reese's proposed definition captures individuals like the *Hoyt* plaintiff, who may have passed through Ohio, but who cannot bring claims under Ohio law because their alleged injuries occurred in the states in which they primarily lived and worked.

Further, the Court finds Reese's argument that it is too early to strike the class definition unpersuasive.  As discussed *supra*, a district court may strike class allegations prior to discovery when no discovery or factual development "would alter the central defect in th[e] class claim."  *Pilgrim*, 660 F.3d at 949.  As currently written, the class definition is overbroad.  No amount of discovery would alter this defect.  The Court also declines Reese's invitation to rewrite the definition itself.  The Court will strike Reese's class definition, but will permit Reese to amend the Complaint to clarify her class definition within 10 days of this Order.

**IV.**     **Tradesmen's Motion to Dismiss Reese's Claims as Time-Barred**

The Court is cognizant of Tradesmen's argument that the claims within the Complaint should be dismissed as time-barred.  (Doc. No. 31-1, PageID# 656.)  However, the Court notes that Masiella's claims, including regarding McClone's alleged sexual assault of Masiella in April 2010, were dismissed on September 29, 2020.  (*See* Doc. No. 43.)  The only remaining claims in this matter are Reese's claims, which she asserts culminated in the discriminatory termination of her employment in 2014—within the six-year statute of limitations.  Reese's allegations do not "affirmatively show that the claim is time-barred" and so dismissal on a statute of limitations basis on a Fed. R. Civ. P. 12(b)(6) motion to dismiss is inappropriate.  *See Bailey v. Hartford Life and Accident Ins. Co.*, No. 5:15-cv-406, 2016 WL 760431, at \*6 (N.D. Ohio Feb. 26, 2016) (citing *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)).

**V.**     **Conclusion**

For the reasons set forth above:

McClone's Motion to Join (Doc. No. 32) is GRANTED.

Tradesmen's Motion to Dismiss in Part and to Strike (Doc. No. 31) is GRANTED IN PART and DENIED IN PART as follows.  Tradesmen's Motion to Dismiss Reese's Disparate Impact Claim is GRANTED.  Tradesmen's Motion to Dismiss Reese's Disparate Treatment Claims is DENIED. Tradesmen's Motion to Dismiss Reese's Aiding and Abetting Claim is GRANTED as to Tradesmen and DENIED as to McClone.  Tradesmen's Motion to Strike Reese's Class Allegations is DENIED. Tradesmen's Motion to Strike Reese's Class Definition as Overbroad is GRANTED.  Reese's Class Definition is stricken.  Reese is granted leave to amend her Complaint within 10 days of this Order. Tradesmen's Motion to Dismiss Reese's Claims as Time-Barred is DENIED.

33

**IT IS SO ORDERED.**

                                                    _s/Pamela A. Barker_
                                                    PAMELA A. BARKER
Date:  December 4, 2020                             U. S. DISTRICT JUDGE

34